UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ALBERT BASSO,

        Plaintiff,

                                       File No.  2:08-CV-75

v.

                                       HON. ROBERT HOLMES BELL

STATE OF MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.

_____/

## O P I N I O N

This matter is before the Court on a second motion to dismiss filed by Defendants

Patricia L. Caruso, James MacMeekin, and Jeff White.  (Dkt. No. 42.)  For the reasons that

follow, the motion will be granted.

## I.  Background

Plaintiff Albert Basso is a former corrections officer who was injured in a prison riot

at the Ojibway Correctional Facility ("OCF Facility") in April of 2006.  Defendant Caruso

is  the  Director  of  the  Michigan  Department  of  Corrections  ("MDOC"),  Defendant

MacMeekin is the regional director for MDOC in charge of the OCF Facility, and Defendant

White is the warden of the OCF Facility.  Plaintiff alleges that, in 2005, Defendants decided

to allow the OCF Facility to accept a higher security level of inmates than it was equipped

to handle.  Plaintiff alleges that he complained about the safety and security conditions at the

facility as a result of the changes, and about certain improper workplace conduct on the part of Defendant White.  Plaintiff alleges that Defendant White transferred him to a more dangerous shift in retaliation for his complaints about the safety conditions at the facility and about Defendant White.  Plaintiff also alleges that some of the inmates that attacked him during the riot were ordered by Defendant White to do so.

On June 2, 2009, Plaintiff filed a second amended complaint asserting five counts of violation of his constitutional rights pursuant to 42 U.S.C. §§ 1981, 1983:  Count I, violation of his Fourteenth Amendment rights to Due Process; Count II, violation of his right to equal protection under the Constitution; Count III, violation of his right to "make and enforce contracts" under § 1981; and Count V, retaliation in violation of his First Amendment rights. (Dkt. No. 48.)  Plaintiff's original complaint asserted similar claims.  In a previous opinion, the Court ruled on a motion to dismiss filed by Defendants as to Plaintiff's original complaint.  (Dkt. No. 38.)  The Court granted the motion with respect to Plaintiff's Fourteenth Amendment due process and First Amendment retaliation claims for failure to state a claim, but denied the motion to dismiss with respect to Plaintiff's other claims, and gave Plaintiff the opportunity to amend his complaint.  (*Id.*)  Defendants again move for dismissal of the claims in Count I (Fourteenth Amendment), Count III (§ 1981), and Count V (First Amendment) of the complaint on the basis of qualified immunity and/or for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

---

[1]Though Defendants' motion moves for dismissal of the complaint, Defendants' brief does not discuss or request dismissal of Count II.

## II. Analysis

In an action brought pursuant to 42 U.S.C. § 1983, the plaintiff must show that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States. *Id.* On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* A complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). "'Once the qualified immunity defense is raised,

the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.'" *Maldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (quoting *Silberstein*, 440 F.3d at 311 (6th Cir. 2006)). In resolving a qualified immunity claim on a motion to dismiss, first the "court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. ---, 129 S. Ct. 808, 816 (2009). "[I]f the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The defense of qualified immunity does not require a plaintiff to satisfy a heightened pleading standard. *Goad v. Mitchell*, 297 F.3d 497, 503 (6th Cir. 2002). However, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## A. Failure to State a Claim (Counts I, V)

### 1. Procedural Due Process (Count I)

In Count I of the amended complaint, Plaintiff alleges that Defendants decided to admit inmates of a higher security level to the OCF Facility without providing a hearing to the corrections officers to discuss the changes, in violation of his right to due process. (Dkt. No. 48, 2d Am. Compl. ¶ 59.) Plaintiff alleges:

> [T]he employee handbook and security unit agreement created a liberty interest in a safe workplace . . . as well as a property interest in a safe and secure workplace and/or employment with adequate staffing.

> Furthermore, the upper command told employees . . . that their specific job location and shift would not be changed in or around early 2005.

(*Id.* at ¶¶ 53-54.)

Plaintiff's procedural due process claim fails because, accepting all of the facts in the complaint as true, he has not alleged the deprivation of an interest that is protected under the Due Process Clause of the Fourteenth Amendment. As the Court indicated in its opinion on the first motion to dismiss, the conditions of Plaintiff's workplace are not property interests protected by the Due Process Clause of the Fourteenth Amendment. *See Alexander v. City of Toledo*, No. 99-3875, 2000 WL 1871693, at *4 (6th Cir. Dec. 13, 2000) (unpublished) ("'Disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment.'" (quoting *Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir. 1990))).

The Court cannot discern the basis for Plaintiff's claim that he was deprived of a *liberty* interest created by his employee handbook and security unit (2d Am. Compl. ¶ 53), or that changes to his work environment deprived him of such an interest without process (*id.* at ¶ 55). Plaintiff's liberty was not implicated by changes to the conditions of his voluntary employment, and Plaintiff does not contend that Defendants terminated him or effectively ousted him from his chosen profession.[2] *See Ridpath v. Bd. of Governors of Marshall Univ.*, 447 F.3d 292 (4th Cir. 2006); *Gies v. Flack*, 495 F. Supp. 2d 854, 867 (S.D. Ohio 2007)

---

[2]To the extent Plaintiff's injuries prevent him from returning to work, these injuries were inflicted by inmates, not Defendants.

(noting that "the Sixth Circuit has interpreted an employee's liberty interest even more strictly by concluding that nothing short of termination constitutes a constitutional violation"). Accordingly, the Court will dismiss Plaintiff's claim for violation of *procedural* due process.

### 2. Retaliation (Count V)

Plaintiff also alleges that Defendant White assigned him to a more dangerous shift in retaliation for Plaintiff's protected speech. A claim of retaliation in violation of the First Amendment requires a plaintiff to show that (1) he was engaged in constitutionally-protected speech, (2) he was subjected to an adverse action or was deprived of some benefit, and (3) the protected speech was a substantial or motivating factor in the adverse action. *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003).

In determining whether a public employee's speech is protected by the First Amendment, a court first must determine whether it may be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146 (1983). The Court previously determined that Plaintiff's First Amendment claim was subject to dismissal because the conduct forming the basis for his retaliation claim, Plaintiff's complaints about prison safety conditions and Defendant White's workplace conduct, did not touch on matters of public concern. (Dkt. No. 38, 04/03/2009 op. at 20.)

In a case similar to the instant case, the Sixth Circuit examined the speech of a prison corrections officer complaining about the failure of the prison to provide emergency

assistance, and about an affair between prison employees. *Albert v. Mitchell*, 42 F. App'x 691 (6th Cir. 2007). The court held that the officer's speech was not a matter of public concern. *Id.* at 693. The court noted that the plaintiff did not allege that the safety conditions could lead to the escape of prisoners, or that the prison employees were misusing public funds. *Id.*

In his amended complaint, Plaintiff alleges that, "[u]pon information and belief, Plaintiff continuously spoke out to upper command during their rounds regarding the health, safety, and security conditions at the facility." (2d. Am. Compl. ¶ 31.) For the reasons stated in *Albert*, speech concerning the safety and security of prison conditions for prison employees does not touch on a matter of public concern.

Plaintiff further alleges that:

Defendant White moved Plaintiff to a more dangerous shift at OCF due to him speaking out against the lack of security and safety at OCF, **increased risk of prisoner escape**, and against White's activities, which included but were not limited to, White's frequent visits to local "gentleman's clubs," seduction of local women, favoritism toward African-American inmates as opposed to Caucasian corrections officers, socialization with female corrections officers, his contacts with the Ironwood Public Safety regarding domestic disputes of which he was involved, **the waste and misuse of public money, and the misuse of state property**.

(*Id.* at ¶ 46 (text in bold indicating changes from the original complaint).) The Court has already held that the speech described in his original complaint does not qualify for First Amendment protection. His amended complaint recharacterizes the nature of that speech, but does not provide any additional factual context to put Defendants on notice of the

7

particular conduct supporting his First Amendment claim. Moreover, the complaint offers no more than a conclusory allegation of a connection between his shift assignment and his protected conduct. To survive a motion to dismiss, a complaint must contain "'direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1985)). A retaliation claim must provide some factual basis to support a plausible inference of a connection between the adverse action and the protected conduct. "[B]are allegations of malice on the defendants' part are not enough to establish retaliation claims against them." *Shehee v. Grimes*, 39 F. App'x 127, 129 (6th Cir. 2002); *see Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982) (noting that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of far-reaching discovery"); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff argues that he has alleged a temporal proximity between Defendants' conduct and his protected speech; however, no such proximity can be ascertained from the complaint. Plaintiff provides absolutely no context either for his protected conduct or for the adverse action. He does not allege when he "spoke out" about prison conditions creating a risk of prisoner escape, or about Defendant White's activities involving misuse of public property, nor does he indicate when he was assigned to a more dangerous shift. There are no other facts in the complaint

that could plausibly support an inference that his shift change was motivated by his protected conduct. Accordingly, assuming the truth of the facts in the amended complaint, the complaint does not state a First Amendment retaliation claim against Defendant White. No allegations in Count V are stated against the other Defendants. Therefore, the Court will dismiss Count V of Plaintiff's amended complaint as to all Defendants for failure to state a claim.

## B. Qualified Immunity (Counts I, III)

Defendants also move for dismissal of Count I (due process) and Count III (§ 1981) of the amended complaint on the basis of qualified immunity because Plaintiff has not identified any specific action on the part of Defendants that would violate a constitutional right. As the first step in the qualified immunity analysis, the Court must determine whether Plaintiff has alleged conduct by Defendants that violate Plaintiff's constitutional rights. *Maldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009).

### *1. Substantive Due Process (Count I)*

After dismissal of his *procedural* due process claim, what remains in Count I is Plaintiff's *substantive* due process claim. In Count I, Plaintiff alleges:

> The affirmative action of assigning dangerous level 4 and 5 inmates to OCF shocks the conscience, because it was intended to directly bring the plaintiff and the other employees of OCF into contact with a known and substantial risk of severe injury that they were not equipped to deal with.

> The Defendant Michigan Department of Corrections has a policy, procedure, or custom of disregarding its contract with the bargaining unit for its officers, and of thereby violating the rights of its members to procedural and

substantive due process under the law. . . . Because of the actions of Defendants, Plaintiff was afforded neither procedural nor substantive due process.

(Dkt. No. 48, 2d. Am. Compl. ¶¶ 60, 64.)  Precisely which actions of which Defendants Plaintiff claims violated his substantive due process rights is not stated.

In its previous opinion, the Court analyzed Plaintiff's substantive due process claim under the state-created danger doctrine, because Plaintiff's alleged injuries were the result of actions by prisoners, not the direct result of actions by Defendants.  Under that doctrine, the state may be liable for injury caused by a private person if the plaintiff can show:

(1) an affirmative act by the governmental actor either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person;

(2) the governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and

(3) the governmental actor had the requisite degree of culpability.

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). The requisite level of culpability includes government conduct that "shocks the conscience." *Id.* "[I]n a non-custodial setting, in order to establish liability for violations of substantive due process under § 1983, a plaintiff must prove that the governmental actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense." *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 453 (6th Cir. 2002).  In considering whether government conduct is arbitrary, a court will consider the voluntariness of the relationship between the government and the plaintiff, whether the governmental actor was required to act in haste or

had time for deliberation, and whether the governmental actor was pursuing a legitimate governmental purpose. *Hunt*, 542 F.3d at 536.

> [W]here the governmental actor does not *intentionally harm the victim or invidiously discriminate against him*, conduct endangering the victim will not shock the conscience if the victim has voluntarily undertaken public employment involving the kind of risk at issue and the risk results from the governmental actor's attempt to carry out its mandatory duties to the public.

*Id.* at 543-44 (emphasis added).

The Court denied the first motion to dismiss with respect to Plaintiff's substantive due process claim because Plaintiff asserted in his brief in response to the motion to dismiss that Defendant White intentionally directed prisoners to harm him. (Dkt. No. 38, 04/03/2009 op. at 10.) Plaintiff's amended complaint does not allege that Defendant White directed prisoners to harm him. The complaint alleges that Defendant White, who did not arrive at the prison facility until several hours after the riot (2d Am. Compl. ¶ 45), spoke to prisoners that attacked Plaintiff at some unspecified time prior to the riot and after Plaintiff complained about Defendant White's activities (*id.* at ¶ 48). However, in response to the motion to dismiss, Plaintiff again asserts that "Defendants purposefully ordered inmates to harm Plaintiff in retaliation for his protected conduct." (Dkt. No. 49, Pl.'s Resp. to Mot. 9.) The Court may use statements in a party's brief to clarify allegations in a complaint that are unclear. *See Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000). To the extent Plaintiff alleges that Defendant White ordered inmates to attack him, Plaintiff has stated a violation of his right to substantive due process because such conduct is "arbitrary" in the

constitutional sense. Accordingly, Defendant White is not entitled to qualified immunity with respect to Count I on the basis that the complaint fails to allege a violation of his right to substantive due process.

However, Defendants Caruso and MacMeekin *are* entitled to qualified immunity with respect to this claim. Plaintiff alleges that Defendants decided to admit inmates of a higher security level to the OCF Facility. (2d Am. Compl. ¶ 55.) Generally, changes to workplace conditions affecting a public employee, even those that are intentional, do not shock the conscience. *Hunt*, 542 F.3d at 537. Plaintiff does not allege that the changes were made for the purpose of harming him (or those in his position). Indeed, the complaint sets forth a legitimate purpose for the changes: they were part of an "'experiment' to test if the facility could manage higher security level inmates with minimum staffing and security." (2d Am. Compl. ¶ 70.)

Plaintiff also alleges that Defendants had a "policy, procedure or custom of treating white officers and facilities whose officer staff is primarily comprised of white officers less favorably than black officers and facilities whose officer staff is primarily comprised of black officers." (*Id.* at ¶ 80.) He does not indicate what actions were taken pursuant to this policy, and the complaint does not state that any decisions by Defendants Caruso or MacMeekin were made for discriminatory reasons. Non-specific allegations of "less favorable" treatment are too vague, in themselves, to state a substantive due process claim. Even assuming that Defendants made changes to Plaintiff's facility for racially discriminatory reasons, their

actions do not "shock the conscience," because the risks involved were of the kind voluntarily assumed by Plaintiff in the context of his employment. *See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 543-44 (6th Cir. 2008). The injury that Plaintiff complains of occurred in April 2006, at least several months after Defendants made changes to the OCF Facility in 2005. According to the complaint, Plaintiff was aware of the risks attendant to the facility changes; he alleges that he complained about them (2d. Am. Compl. ¶ 31), yet he chose to continue working at the OCF Facility despite these risks. This fact is relevant both to the "affirmative act" requirement and to the culpability requirement for demonstrating a substantive due process claim. *Hunt*, 542 F.3d at 539 ("'When a victim bears some responsibility for the risks she has incurred, it is even more difficult to say the 'state' has 'created' the 'danger' to her by its affirmative acts.'") (quoting *Jones v. Reynolds*, 438 F.3d 685, 694 (6th Cir. 2006))).

Thus, Defendants MacMeekin and Caruso are entitled to qualified immunity with respect to Plaintiff's substantive due process claim under the first prong of the qualified immunity analysis. Because the changes made by Defendants to Plaintiff's workplace involved the sort of risks that he voluntarily assumed as part of his employment, including risks that he was aware of and complained about, and because the complaint alleges that the changes were motivated by a legitimate purpose, Plaintiff has not alleged affirmative acts by Defendants MacMeekin and Caruso that shock the conscience in violation of Plaintiff's right to substantive due process. For the foregoing reasons, therefore, the Court will dismiss

Count I of the complaint against Defendants MacMeekin and Caruso on the basis of qualified immunity.

### 2. Section 1981 (Count III)

Title 42, Section 1981 provides, in relevant part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In Count III of the second amended complaint, Plaintiff alleges:

78. Notwithstanding the liberty interest at issue, at some point before April 9, 2006, Defendants made a conscious decision to expose Plaintiff and his fellow corrections officers to a definite, known and substantial risk of severe injury by agreeing to assign dangerous level 4 and 5 inmates to OCF, despite the knowledge that the facility did not have the staffing, or security features to accommodate higher level offenders.

79. Prior to dangerous level 4 and 5 inmates being sent to OCF, and despite the liberty interest involved, neither Plaintiff nor any of the other staff at OCF were provided a hearing as to the change that would be affected in their assignments, and whether they were willing to accept a risk that was vastly increased from what they had agreed to in accepting employment at a level 2 correctional facility.

80. Defendants had a policy, procedure or custom of treating white officers and facilities whose officer staff is primarily comprised of white officers less favorably than black officers and facilities whose officer staff is primarily comprised of black officers.
. . .

82. Defendants' discriminatory actions have the effect of denying the Plaintiff the right to make and enforce contracts, and the full and equal protection of all laws and proceedings for the security of persons and property.

14

(Dkt. No. 48.) Count III of the complaint does not identify the actions of Defendants taken pursuant to its discriminatory policy, or any other actions that might have violated Plaintiff's rights under section 1981. Non-specific allegations of "less favorable" treatment are too vague to support a claim. Thus, Defendants' request for qualified immunity will be granted under the first prong of the qualified immunity analysis because Plaintiff has not alleged a constitutional violation on the part of Defendants.

### III. Conclusion

For the reasons stated herein, the Court will dismiss Plaintiff's claims in Counts I, III, and V against Defendants MacMeekin and Caruso, and will dismiss the *procedural* due process claim in Count I, and his claims in Counts III and V against Defendant White. Count I (substantive due process) remains pending as to Defendant White. Count II (equal protection) remains pending as to all Defendants.

An order will be entered that is consistent with this opinion.


Dated: April 29, 2010                          /s/ Robert Holmes Bell
                                               ROBERT HOLMES BELL
                                               UNITED STATES DISTRICT JUDGE