UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALBERT BASSO,

    Plaintiff,

v.

PATRICIA L. CARUSO, et al.,

    Defendants.
_____/

File No. 2:08-CV-75

HON. ROBERT HOLMES BELL

**OPINION**

This matter is before the Court on Defendants' motion for summary judgment. (Dkt. No. 74.) For the reasons that follow, the motion will be granted.

**I.**

Plaintiff Albert Basso is a former corrections officer who was injured in a prison riot at the Ojibway Correctional Facility ("OCF") in April of 2006. Defendant Caruso is the Director of the Michigan Department of Corrections ("MDOC"), Defendant MacMeekin is the regional director for MDOC in charge of the OCF Facility, and Defendant White was the warden of OCF.[1]

---

[1] Jeffrey T. White died on February 21, 2010. (Dkt. No. 62.) Suggestion of death was filed on September 15, 2010, and no motion for substitution has been filed. Thus, the claims against Mr. White will be dismissed pursuant to Fed. R. Civ. P. 25(a)(1).

Plaintiff alleges that, in 2005, Defendants decided to allow OCF to accept a higher security level of inmates than it was equipped to handle. Plaintiff complained about what he perceived as inadequate staffing and security measures at OCF in view of the higher security level of the prisoners being held there. Plaintiff alleges that Defendants intentionally exposed the corrections officers at OCF to prisoners of a higher security level than the facility was equipped to accommodate.

Plaintiff complained about safety conditions and Defendant White's activities, including frequenting gentleman's clubs, seducing local women, favoring black inmates, and socializing with female corrections officers. Plaintiff alleges that Defendant White transferred him to a more dangerous shift in retaliation for his complaints about the safety conditions at the facility and about Defendant White. Plaintiff also suggests that some of the inmates that attacked him during the riot were ordered by Defendant White to do so.

On April 3, 2009, the Court granted Defendants' first motion do dismiss with respect to Plaintiff's original Fourteenth Amendment due process and First Amendment retaliation claims, but denied the motion to dismiss with respect to Plaintiff's other claims, and gave Plaintiff the opportunity to amend his complaint. (Dkt. No. 38.) On April 29, 2010, the Court granted Defendants' second motion to dismiss Count I (Fourteenth Amendment), Count III (§ 1981), and Count V (First Amendment) of Plaintiff's second amended complaint. (Dkt. No. 54.) In light of the Court's previous rulings and the death of Jeffrey White, *see supra* n. 1, Plaintiff's sole remaining claim is Count II of his second amended complaint, alleging

a violation of Plaintiff's rights under the Equal Protection clause. Count II was not addressed in Defendants' second motion to dismiss, but is now challenged in Defendants' motion for summary judgment. (Dkt. No. 74.)

**II.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

"To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).

Claims of violation of the Equal Protection Clause based on discrimination in the workplace are subject to the same standards as claims of discrimination under Title VII. *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988) ("[T]he showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983."); *Watson v. City of Cleveland*, 202 F. App'x 844, 856 (6th Cir. 2006) ("Proving intentional discrimination for an equal protection claim brought under § 1983 requires the plaintiff to make the same showing required to prove a violation of Title VII.").

A plaintiff claiming discrimination may provide direct evidence of discrimination, or a plaintiff may establish a *prima facie* case under the burden-shifting analysis described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Under this framework, the plaintiff bears the initial burden

4

of establishing a *prima facie* case of discrimination. A *prima facie* case of employment discrimination requires a plaintiff to show that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was treated differently than similarly situated individuals who are not members of his protected class. *See McDonnell Douglas*, 411 U.S. at 800-04. Furthermore, in reverse-discrimination cases, the first element of the prima facie case is evidence of "background circumstances" indicating that the defendant is the "unusual employer who discriminates against the majority." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 253. Finally, if the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. *Id*. Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id*.

Finally, a plaintiff who has not shown deprivation of a fundamental right or membership in a protected class may still bring an equal protection claim under a "class of one" theory. A plaintiff alleging a "class of one" equal protection claim must show that "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562,

564 (2000). Plaintiff may "demonstrate that a government action lacks a rational basis in two ways: either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *TriHealth, Inc. v. Board of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005).

Here, it is unclear whether Plaintiff is proceeding solely under a "class of one" theory or whether Plaintiff continues to allege membership in a protected class. Plaintiff states in his response that he "is essentially proceeding on a 'class of one' equal protection claim." (Dkt. No. 80 at 14.) However, Plaintiff also provides the legal standard for a typical equal protection claim (*id*. at 12-13) and alleges racial animus on the part of Defendant White. (*Id*. at 13.) The Court will consider both theories.

To the extent that Plaintiff continues to allege membership in a protected class, he has not satisfied his burden under the summary judgment standard. The only cognizable protected class presented by Plaintiff is that of being Caucasian. To make a *prima facie* case of reverse-discrimination, Plaintiff must provide background information showing that Defendants are an "unusual employer who discriminates against the majority." *Sutherland*, 344 F.3d at 614. Although Plaintiff alleges in his second amended complaint that "Defendants had a policy, procedure or custom of treating white officers and facilities whose officer staff is primarily comprised of white officers less favorably than black officers and facilities whose officer staff is primarily comprised of black officers," (Dkt. No. 48), Plaintiff does not adequately support his claim of racially motivated discrimination.

6

Plaintiff has not provided any "background information" suggesting a systematic preference for black MDOC employees over white MDOC employees. The only adverse actions against individual Caucasian MDOC officers noted by Plaintiff involve himself. Plaintiff alleges that Defendant White assigned Plaintiff to a more difficult work shift, and that he instigated the 2006 riot and ordered a "hit" on Plaintiff by black inmates. Though of a serious nature, Plaintiff has failed to tie these alleged adverse actions to any racial motivation. Plaintiff himself believes that Defendant White "vindictively changed Plaintiff's shift to the afternoon shift because Plaintiff was very vocal about the security problems and inadequate staffing levels at [OCF]." (Dkt. No. 80 at 2.) Plaintiff's allegation that Defendant White may have orchestrated the April riot and Plaintiff's injuries, even if believed, is attributable to the same motive. Plaintiff offers no evidence linking either of these alleged harms to racial animus, nor would racial animus explain why Plaintiff was singled out from other similarly situated (and predominantly Caucasian) officers.

Similarly, there is no evidence that MDOC facilities staffed predominantly with black officers receive more favorable treatment than facilities staffed predominantly with white officers. Indeed, Plaintiff has not identified any MDOC facilities which even *have* a predominantly African American staff. As Defendants note, eighty-one percent of MDOC employees are Caucasian. (Dkt. No. 75 at 10.) Plaintiff claims that Defendants intentionally burdened OCF with high-risk inmates whom OCF was not equipped to house.[2] Even taken

---

[2] There is some ambiguity as to whether Plaintiff's allegation is that prisoners actually
(continued...)

as true, this does not demonstrate racial motivation absent other evidence. Indeed, Plaintiff himself offers OCF's isolated geography as the primary reason for the alleged influx of dangerous prisoners. (Dkt. No. 80 at 5 ("Because of the prison's remote location, Ojibway was getting some of the worst problem prisoners that the MDOC had to offer.").) In short, Plaintiff has not met his burden of demonstrating racially motivated discrimination against a majority. Accordingly, his claim must fail under a reverse discrimination protected class analysis.

Turning to Plaintiff's "class of one" equal protection claim, the Court finds that Plaintiff failed to meet the heavy burden of showing that the state had no rational basis for its actions. Although Plaintiff argues that the state had no rational basis for sending dangerous prisoners to OCF, (Dkt. No. 80 at 15), Plaintiff himself assigns a rational basis to the Defendants' alleged actions: "OCF was an MDOC experiment . . . Ojibway was a test facility for the MDOC to see how much money they could save by putting the highest level prisoners in the lowerst level prisoner settings." (Dkt. No. 80 at 3.) Plaintiff did not eliminate "every conceivable basis" which might support Defendants' alleged actions, nor did Plaintiff show animus, nor did Plaintiff refute Defendants' claim that prisoners are classified and placed in prisons based on factors such as "length of the prisoner's sentence,

---

(...continued)
classified at levels 4 or 5 were sent to OCF, a level 2 facility, or whether Plaintiff merely disagrees with MDOC's policy of reclassifying certain prisoners at lower levels after periods of good behavior. Defendants deny that any level 4 or 5 inmates were sent to OCF. Nevertheless, for the purpose of this analysis under the summary judgment standard, the Court will assume that level 4 and 5 prisoners were sent to OCF.

their escape history, and misconduct history . . . [and] special educational or medical needs." (Dkt. No. 75 at 14.) Instead, Plaintiff continues to assert that Defendants sent dangerous prisoners to the isolated OCF prison as an "experiment." As the Court indicated in its April 29, 2010, opinion, experimentation with an eye towards cost efficiency is a rational basis for prisoner classification and allocation. (Dkt. No. 54 at 12.)

Both allegations of reverse discrimination and claims proceeding under a "class of one" theory place a heavier burden on plaintiffs than typical equal protection claims. Plaintiff has not shouldered that burden, and Defendants' motion for summary judgment will be granted. An order and judgment consistent with this opinion will be entered.


Dated: March 25, 2011                          /s/ Robert Holmes Bell
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE